### William P. Pope, Respondent, *v.* Thomas O'Hara, Appellant.

S., being the owner of a block of stores numbered 1, 2, 3 and 4, respectively, constructed a railway transversely through the cellars of Nos. 1, 2 and 3 for the benefit of No. 4. He sold and conveyed to different purchasers Nos. 1, 2 and 3, reserving in the deed the railway and the right to himself and assigns to pass and repass at pleasure. Subsequently the owners of Nos. 1, 2, and 3, being desirous of extinguishing the right of way and closing up the openings for the railway, purchased No. 4. In the deed thereof S. relinquished to the grantees all his right and title to the railway, and thereupon the owner of No. 2 built a solid stone wall between it and No. 3, without objection from the owner of the latter. The owner of No. 3 having subsequently become sole owner of No. 4, claimed the right of way, upon the ground that the agreement to extinguish it was by parol and therefore void.

*Held*, that the right of way, having been created by deed, was not extinguished by non-user, and that it was a freehold interest, but that the parol agreement, having been partially performed, was valid and operative as an equitable estoppel to extinguish the right of way.

Where a deed is introduced in evidence by one who is a stranger thereto, to prove as against a subsequent grantee an admission by the parties to the conveyance, the grantee is not estopped from proving that the provision relied upon was inserted in the deed by mistake.

The use of the word appurtenances in a deed does not recognize or recreate an extinguished right of way across adjoining premises.

A fire having occurred which destroyed the wall between Nos. 2 and 3, plaintiff, the owner of No. 2, and defendant, the owner of No. 3, entered into a contract by which plaintiff agreed to build a wall upon the same foundation, defendant to pay one-half the expense. Plaintiff built up a solid wall as before. *Held* (LOTT, Ch. C.), that the writing controlled and estopped defendant from questioning acts done under it, and, therefore, from claiming a right of way.

(Submitted January 3, 1872 ; decided May term, 1872.)

APPEAL from a judgment of the General Term of the Supreme Court in the sixth judicial district, affirming a judgment in favor of the plaintiff entered upon a decision of the court at Special Term.

This action is for the recovery of one-half of the expense of taking down a wall standing wholly on the plaintiff's land, and rebuilding it, to be used as a party wall between the building of the plaintiff on the east and the defendant on the west, under a written contract for that purpose. The defendant answered, alleging that he had a right of way easterly through the plaintiff's cellar, and the right to the use of a railway running easterly and westerly through the cellars of both houses, and that the plaintiff, in constructing the said wall, had closed up the said railway, and thereby entirely obstructed its use, to the great damage of the defendant.

The action was tried before the court, a jury having been waived. It appeared that the parties were the owners of adjacent buildings in Binghamton, occupied as stores. The plaintiff's store was burnt, and the west wall thereof, being a continuous wall from front to rear, standing entirely on his land, and forming the east wall of the defendant's store,

was so injured by the fire as not to be fit for use in rebuilding, and the plaintiff determined to take it down. The parties thereupon entered into an agreement under seal, whereby the plaintiff agreed to take down the wall and build a new one of the old materials and such new ones as should be necessary, upon the same foundations, and on its completion convey to the defendant the west half of said wall and the ground on which it should stand when completed; and the defendant agreed to pay to the plaintiff one-half of the expenses, as the work progressed, of taking down and clearing the old materials and of furnishing the new materials, and putting up the wall upon the old foundations. The plaintiff having taken down the old and rebuilt the cellar portion of the new wall, rendered to the defendant an account of the expense, and demanded payment of one-half, which the defendant refused to pay. The judge found that in March, 1851, the right of railway existed from the Chenango canal extending westerly through the cellars of four adjoining stores, known as Nos. 1, 2, 3 and 4 Ely place, No. 4 belonging to Strong, No. 3 to the defendant O'Hara, No. 2 to Gregory and No. 1 to Sisson. That Sisson, Gregory and O'Hara were then all desirous of getting rid of this railway and closing it up. That Strong owned No. 4, and had the right of way under all three of the other stores. That Sisson, Gregory and O'Hara, for the purpose of extinguishing the railway, agreed among themselves, in March, 1851, that they would jointly purchase Strong's store, No. 4, and extinguish and close up the railway. They accordingly made the purchase of Strong. After this purchase, Gregory, who owned No. 2, while O'Hara owned No. 3, built a solid wall of stone masonary, two and one-half feet thick, between his store and that of O'Hara, who made no objection at the time of his right to do so, nor did he make any complaint against it until 1854, when the plaintiff Pope proposed to purchase of O'Hara store No. 4, of which at that time he had become the sole owner, and Pope declined to complete the purchase unless O'Hara would convey and guarantee to

him the right to use this railway. That O'Hara then complained to Gregory for closing up the railway, and insisted it should be opened; and Gregory claimed it was rightly closed, and that he would not open it. The same condition of things remained, the wall still up, until the fall of 1862, when the stores Nos. 1 and 2 having been burned down, the plaintiff and defendant entered into the said contract for taking down the old wall and erecting the new one. That the contract makes not the least allusion to any railway, but seems clearly to require the new wall to be build solid like the old one, and without any railway opening; and O'Hara stood by and saw the wall erected some few feet, where the railway opening used to be, without any objection, and saw Sisson's wall laid up over where this railway used to run, without any remonstrance. That Sisson planked and spiked up the railway between Nos. 1 and 2, and Webster, a tenant of O'Hara, planked up a close partition between Nos. 3 and 4.

The justice found, upon these facts, that the railway must be held to have been extinguished, and that the defence entirely failed, and that it was very questionable whether the language of the written contract, " that the said wall shall be erected on the present foundation," entered into between the parties to this action, does not estop the defendant to set up his claim; that there was enough to constitute an equitable estoppel against the defendant.

The judge thereupon directed judgment for one-half of the said expenses, with interest from the commencement of the action, amounting together to $148.17, with the costs. Other facts appear in the opinion.

*L. Seymour* for the appellant.

*O. W. Chapman* for the respondent. Defendant is estopped by the contract on which this suit is brought. (*Dezell* v. *Odell*, 3 Hill, 222; *Carpenter* v. *Silwell*, 12 Barb., 128.) Defendant is estopped by his acquiescence and participation

in the various acts significant of the mutual abandonment of this right of way. (*Corning* v. *Gould*, 16 W. R., 531.) Equity would enforce the agreement, after a part performance, although it was not in writing. (*Malins* v. *Brown*, 4 N. Y., 404; Story's Eq. Jur., § 759; *Lowry* v. *Tew*, 3 Barb. Ch., 407; *Lobdell* v. *Lobdell*, 36 N. Y., 327.) A parol agreement to shut up a right of way after it is executed is valid. (2 Par. on Cont., 315; *Thomas* v. *Dickinson*, 12 N. Y., 371, 372.) The statute of frauds has no application here. (3 Kent's Com., 449, mar. p.; *Corning* v. *Gould*, 16 W. R., 531, 542; *Crain* v. *Fox*, 16 Barb., 184.) There is no estoppel as between a party to a deed and a stranger. (*Arville* v. *Willson*, 4 Barb., 190; *Sparrow* v. *Kingman*, 1 N. Y., 248; 1 Greenl. on Ev., §§ 211, 23 *u*, 279; 7 Bac. Abr., 620; 2 Halst. on Ev., 39, §§ 257, 258; *Whitbeck* v. *Whitbeck*, 9 Cow., 266; *Dwight* v. *Pearl*, 24 Barb., 57.) The rule that you cannot contradict a writing by parol applies only in suits between parties to the instrument. (1 Green. on Ev., § 279; *Reynolds* v. *Magness*, 2 Iredell, N. C., 26.) The right of way became extinct by operation of law. (2 Bouvier's Insts., 172; Gale & Whately on Easements, 7–252; *Whately* v. *Thompson*, 1 Bos. & Pull., 371.)

LEONARD, C. The agreement of March, 1851, to extinguish the right to use the railway running transversely through the cellars of the four stores on Ely place, Binghamton, was found by the judge before whom the action was tried at the circuit, on parol evidence, and an exception was there taken to its admissibility, and it must be conceded that if such evidence was illegally admitted, the fact of the agreement so found is not sustained by testimony.

It will be necessary briefly to consider the evidence relating to the origin of the right, so as to ascertain the true aspect of the question. Cyrus Strong is the common source of title of the four stores, and appears to have constructed the railway for the purpose of transporting heavy freight over it from the Chenango canal to each of them. The stores were numbered

respectively 1, 2, 3 and 4, and No. 1, adjoined the tow-path of the canal on the east, and the servitude appears to have been due from the stores nearest the canal, having the smaller numbers, to those situated westerly therefrom, and having the larger numbers. The first conveyance was of No. 1 from Strong to Benjamin F. Sisson, in March, 1849, but it appears from the deeds that an earlier contract was made by Strong for the sale and conveyance of No. 2 to George W. Gregory. In April, 1850, Strong conveyed No. 3 to the defendant, Thomas O'Hara. The railway is referred to in these deeds, and also in that conveying No. 3 to Gregory, in substantially the same terms. The following, as a sample, is from the deed of No. 3, to O'Hara, viz.: "The said Cyrus Strong excepting and reserving the railway in the cellar of the premises conveyed, with the right to him and his heirs, or assigns, at all times to pass or repass at their pleasure." The said three persons, Sisson, Gregory and O'Hara, so owning and occupying the said stores, Nos. 1, 2 and 3, united in purchasing from Strong the store No. 4, which he conveyed to them by deed, April 1, 1851, in which the railway is mentioned as follows, viz.: "The said Cyrus Strong also hereby releases *by*" (meaning " to ") " the parties of the second part, all his right and title to the railway in the cellars of the adjoining premises heretofore conveyed to Benjamin F. Sisson and Thomas O'Hara, and contracted to be conveyed to George W. Gregory." It thus appears that Cyrus Strong constructed the railway while he was the owner of all the stores; that he reserved the right to use it, to himself, his heirs and assigns, by each of the deeds conveying stores Nos. 1, 2 and 3, and that each of the successive grantees of Nos. 2 and 3 took the right of common use of the railway by their deeds as the assignee of Strong, while he still remained the owner of store No. 4, having the dominant right to the use of the way as such owner, and that by his deed of No. 4, in March, 1851, he released the entire right of way so that Sisson, Gregory and O'Hara became the owners of the way exclusively. The mode adopted is a very inartificial one for creating a right of way or easement, by

deed or grant, but such is the fair intent and construction. It is the general rule that a right of way or easement acquired by deed, can be extinguished only by a deed. A right acquired by prescription may be lost by non-user, but not when acquired by deed. (*Jewett* v. *Jewett*, 16 Barb. R., 150 ; *Smyles* v. *Hastings*, 22 N. Y. 217, 224.) A right of way created by deed is a freehold interest, if the grant be to heirs and assigns. (Kent's Com., 419, marg.) Were there no exceptions to the general statutory rule forbidding an estate or interest in land to be granted, assigned, surrendered or declared unless by operation of law, or by deed in writing, subscribed by the party, it is entirely clear that the evidence would not support the finding of an effective or valid agreement to extinguish the right of way here claimed by the defendant. (2 R. S., 134, § 6, marg.) The tenth section of the same chapter and title provides that the powers of courts of equity to compel the specific performance of agreement in cases of part performance thereof are not abridged by anything in that title contained. In my opinion the present case is an exception to the general rule referred to.

It appears from the facts found by the judge below that the agreement to extinguish the way, and to purchase the store No. 4 for that purpose, were one and identical. He finds that " in March, 1851, Gregory, Sisson and O'Hara, for the purpose of extinguishing the railway, agreed among themselves that they would jointly purchase Strong's store, No. 4, and extinguish and close up this railway."

Chancellor WALWORTH says : " The principle upon which courts of equity hold that a part performance of a parol agreement is sufficient to take a case out of the statute of frauds, is that a party who has permitted another to perform acts on the faith of an agreement shall not be allowed to insist that the agreement is invalid because it was not in writing, and that he is entitled to treat those acts as if the agreement, in compliance with which they were performed, had not been made." (*Lowry* v. *Tew*, 3 Barb. Ch. R., 413.)

It is said in an analogous case that it would operate as a

fraud, unless the agreement was carried into execution. (*Malins* v. *Brown*, 4 N. Y., 404, 407; *Lobdell* v. *Lobdell*, 36 N. Y., 327, 331; 3 Parsons on Contracts, 359; Story's Eq. Ju., § 759.) These authorities fully sustain the application of the equitable rule in this case.

The defendant united with Gregory and Sisson to purchase the store No. 4, in the faith and confidence that the railway was to be extinguished.

The dominant premises, store No. 4, to which the three others were servient, was purchased, the money of the parties paid, not more for the purpose of acquiring that store than to extinguish the railway. The purpose was carried into effect by Gregory, and the way was closed by a substantial wall of stone and mortar soon after the store No. 4 was purchased, and so remained at the time the plaintiff purchased store No. 2 of Gregory in 1858, and continued until taken down under the said agreement in 1862. It is found that the purpose of extinguishing the railway was the object of the parties. It may well be said, if that object is defeated, it would operate as a fraud upon Sisson and Gregory and their assignees. The plaintiff, as the assignee of Gregory, must be held entitled to the benefit of the extinguishment of the way, so far as it pertained to the premises which were conveyed to him by Gregory or his assignees.

It is urged that secondary evidence was improperly admitted to prove that a provision was inserted by mistake in the deed from Gregory to the plaintiff, executed in 1858, " excepting and reserving the railway and track through the cellar, to be at all times open for the use of the grantor and his assigns." This deed was introduced in evidence by the defendant, and was relied on to prove an admission by the parties to the deed, Pope and Gregory, that the right of way was in existence in 1858, when it was executed, and as tending also to impair the credit of Gregory, as a witness for the plaintiff, to prove the agreement between O'Hara, Sisson and Gregory, in 1851, for the extinguishment of the railway.

It is to be observed that O'Hara is a stranger to this deed.

As between the parties to that deed, there was no dispute. They were agreed that the provision was there by mistake, and without any agreement having been made between them that there was any such right in existence or to be reserved. The plaintiff was not estopped from proving the mistake as against O'Hara, the defendant, who was a stranger to the deed. (1 Greenleaf's Ev., § 211.)

It should be observed that this deed makes a reservation simply, and does not declare that the premises are subject to a right of way in favor of other premises, nor of any person except the grantor and his assigns; it is a *reservation* of a right to the grantor and his assigns only, where the grantor had no premises to which the right could attach, either in his own favor or in favor of an assignee. This is a circumstance strongly corroborating the evidence as given, that the mistake occurred by employing a scrivener who copied the deed from that of Strong to Gregory, and was not read by the parties to the deed.

The deed from Strong to Gregory in 1853, which contains the reservation of the right of way in the cellar in the same form, substantially, as those to Sisson and O'Hara for stores Nos. 1 and 2, having been executed subsequent to the alleged extinguishment of the easement, is urged as a record admission by Gregory of such importance as to estop him and his assignees from making such claim.

Mr. Strong had conveyed the three other stores with the right of way, and, as the right had never been extinguished by deed, he could not be entirely safe against liability on his deeds for the other stores, in respect to such right, unless he made his conveyance of No. 2 to Gregory, so as to continue the right of way. The reservation of the right by the deed to Gregory did not revive or re-create a right in favor of O'Hara, nor did it injure or affect the rights acquired by the parties to the agreement of March, 1851, for the purchase of store No. 4 and the extinguishment of the easement. The defendant was at liberty to urge, at the trial, such consideration for the deeds from Strong to Gregory, and from Gregory

to the plaintiff, tending to affect the degree of credit to be given to the evidence of Gregory and the plaintiff, as they appeared to demand; but the facts, having been found upon competent evidence, are considered conclusive in a court having the review of errors of law only, and cannot be here examined.

The cases of *Corning* v. *Gould* (16 Wend. R., 531) and *Crain* v. *Fox* (16 Barb. R., 184) were urged upon our attention by counsel, but they are not believed to be applicable to the present case. In those cases an obstruction to the easement, erected or created by a party to whom the servitude was due in whole or in part, or by the owner of the dominant estate, was held to extinguish the right. And it was correctly observed by the counsel for the appellant that those cases are in vindication of the rights of purchasers in good faith while the easement was so obstructed.

O'Hara, the owner of No. 3 and also of No. 4, by deeds from Sisson and from the assignees of Gregory for their two-thirds interest in store No. 4, holding the dominant estate until the easement was extinguished, has not erected or created any obstruction to the enjoyment of the right. The present case is distinguishable from those referred to above in this respect. I will briefly mention two other subjects supposed to entitle the defendant to a new trial.

The intermediate deeds from Gregory and his assignees to O'Hara, for the one-third interest of Gregory in store No. 4, contain no reference to the railway, but do grant the appurtenances. The use of the word *appurtenances* in those deeds has been correctly held not to recognize or create a right of way across No. 2 after the right had been extinguished by the prior agreement of 1851.

The deed of Sisson to O'Hara for his one-third interest in store No. 4 is dated in April, 1853, and conveys all the right to the railway, and the right to pass and repass, which he acquired by the deed for that store executed by Strong, April 1st, 1851.

That deed from Sisson could create no right of way in the

cellar of store No. 2, if the right had been previously extinguished, as it has been found to have been, by the agreement of March, 1851.

These deeds, like some of the others before mentioned, might be supposed to have affected, in some degree, the credit of some of the plaintiff's witnesses who testified to the agreement for the extinguishment of the right of way, but their weight as evidence has been passed upon by the court below, and found not to sustain the claim of the defendant.

The evidence of a parol agreement having been properly admitted and found to be valid, and operative as an equitable estoppel to extinguish the right of way claimed by the defendant, by reason of its part performance, the judgment appealed from should be affirmed with costs.

All concur.

LOTT, Ch. C., concurs on the ground that the writing between the parties controls and estops defendant from questioning acts done under it.

Judgment affirmed.