### JAMES BARNES *vs.* WILLIAM LLOYD.

A clearly defined right of way, originating in grant or reservation, is not lost by mere non-user.

A right of way as appurtenant to land may be established by a reservation in a deed of the land over which the way is claimed; and will pass by a deed of the land to which it is appurtenant without express words.

TORT. Trial in the Superior Court, before *Dewey, J.,* who allowed the plaintiff's exceptions as follows :

" This was an action of trespass *quare clausum* for taking down the fences and leading the defendant's cow from the highway that runs north and south and bounds the plaintiff's premises on the east, across the strip of land marked A on the plan

annexed, on the north end of the said premises and near the north line of the same, to the defendant's land, situate west of and adjoining the plaintiff's premises.

" The defendant admitted the acts of taking down the fences and leading his cow across the north end of the plaintiff's premises, near the north line, without the consent and against the objection of the plaintiff, and it was not claimed that he did any unnecessary damage, if he had a right in law to cross.

" The title of the plaintiff was not questioned, except that the defendant claimed a right to do as he did by virtue of a grant originating in a deed made by Henry W. Dwight, April 9, 1800, of the defendant's premises and the piece marked B, to Abram Williams, in words as follows : ' Also a right to pass and repass, from the road that runs from Nehe. Ide's to said Williams, to the

land above described, upon a piece of land which I have agreed to convey to said Ide, reserving a right to pass as aforesaid.'

" At the time Dwight conveyed to Abram Williams, he (Dwight) owned the defendant's premises, and the strip of land marked A on the plan, and which is now owned by the plaintiff and also the strip marked B. Williams conveyed to Churchill October 4, 1822, the strip B, reserving land for a road across the east end thereof.

" The strip A, under proper instructions of the court, was found by the jury to be the piece of land named in the deed of H. W. Dwight to Abram Williams, as the piece he had agreed to convey to Ide, and over which the right of way was granted.

" The plaintiff claimed that if any right of way or easement ever existed, it had been extinguished by prescription.

" April 9, 1800, when Dwight conveyed the defendant's premises to Abram Williams, he, Williams, owned no adjoining land. Abram Williams owned the defendant's premises from April 9, 1800, to March 20, 1832, when he conveyed them to William Williams without making reference to or mention of any right of way or easement.

" There was no evidence that Abram Williams, while he owned the defendant's premises, located or used any right of way across the strip A.

" William Williams owned the defendant's premises from March 20, 1832, to August 25, 1854, when he died intestate, and his estate was settled in the Probate Court, and these premises were, by proceedings there had, divided, without reference to or mention made of any right of way, among his three daughters, who by separate deeds conveyed the premises to the defendant. The deed of Alice, dated May 28, 1869, contained the following clause : ' Together with the right of way to said premises over land of James Barnes, it being the same forever reserved to heirs of William Williams 2d, as seen by deed of Amos Dresser to James Barnes, dated April 1, 1859, and recorded Book No. 167, P. 500.' The deed of Caroline, dated July 12, 1867, contained the following : ' Together with the right of way to said premises on land of James Barnes, forever reserved by Amos Dresser to

heirs of William Williams 2d.' And the deed of Flora, dated July 12, 1867, contained the following: 'And we do furthermore hereby convey to said Lloyd the right of way to said premises owned by us, over land of James Barnes, it being the same forever reserved to us by deed of Amos Dresser to James Barnes, dated April 1, 1859, and recorded in Book No. 167, P. 500.'

" The plaintiff's title comes from Nehemiah Ide, who once owned the plaintiff's premises, including the strip of land A, which strip he acquired from Dwight; and Ide's deed to Justin Dickinson, February 11, 1801, contained the words following: 'Excepting and reserving a right to a bridle path or footway, on the north side of said strip, of four rods, from said highway to said land of Abram Williams.'

" June 15, 1805, Dickinson conveyed the strip to Gideon Cook, and this deed contained the following clause: 'Excepting and reserving a right, a bridle path or footway, on the north side of said strip, of four rods.'

" Gideon Cook died, and May 5, 1807, Asa Williams was appointed his administrator, and, by order of the Probate Court, all his real estate and all his rights and interests therein were assigned to his eldest son, John Cook, by decree of February 3, 1808, without any mention of or reference to any right of way or easement.

" John Cook conveyed to Ebenezer Tolman June 15, 1808, and the deed contained the following clause: 'Excepting and reserving a right to a bridle path or footway, on the north side of the land west of the highway.'

" After Tolman's death, his executor, by license of the Probate Court, February 26, 1827, conveyed to George C. Morgan, by a deed containing this clause: 'Excepting and reserving a right to a bridle path or footway, on the north side of the land west of the highway, as is reserved in the deed from John Cook to said Tolman.'

" Morgan conveyed to Ruth Blake April 7, 1835, by a deed containing the following clause: 'Excepting and reserving a right to a foot or bridle way, on the north side of land west of the highway, to Abram Williams's land.'

" Blake conveyed to Orrin S. Porter April 30, 1849, by a deed containing this clause : ' Excepting and reserving a right to a foot or bridle way, on the north side of land west of the highway, to Abram Williams.'

" Porter conveyed to Amos Dresser December 10, 1850, by a deed containing this clause : ' Excepting and reserving a right to a foot or bridle way, on the north side of land above, to Abram Williams's heirs.'

" Dresser conveyed, April 4, 1859, to James Barnes, the plaintiff, by a deed containing this clause : ' Excepting and reserving a right of way, on the north side of said land, to the heirs of the late William Williams 2d.'

" There was evidence, from witnesses introduced by both parties, that Abram Williams, while he owned the defendant's premises, used a way to and from them by passing from the highway by a lane leading therefrom northerly, and adjoining the north line of the Carpenter Lot, westerly about half the length of said north line, thence southerly across the Carpenter Lot, and over the east end of the piece of land B ; and one of the defendant's witnesses testified that that was the most convenient way to the lot. This way had been used by the defendant, and those under whom he claimed, until the time of the trial, but there was evidence that it had been so used by the defendant by agreement with the owner of the Carpenter Lot, and that the defendant and those under whom he claimed had no way in their own right to the defendant's lot, except over strip A.

" There was evidence offered by the defendant, that William Williams, about the year 1854, with a pair of oxen and sled loaded with logs or wood, passed over about one third of the distance of the length of the strip A, entering from the defendant's premises on to the plaintiff's land south of the south line of strip A, and from thence passing on to the strip A at a point about ten rods east of its west end, and from thence easterly on said strip A about ten or twelve rods, and from thence taking down the fence on the north line and passing off on to the Carpenter Lot.

" There was evidence from all the witnesses who testified in regard to it, that the east and west ends of strip A had always

been fenced by a fence containing no gate, barway or opening, and for a period of several years there was a fence extending from the north line of strip A, near the middle of the line southerly across the strip A, and further south and thence west to the defendant's land at a point about twenty rods south of the west end of the strip A; and that as long as the witnesses could remember, the strip A had been every year either ploughed, sowed, mowed, planted, or cultivated by the plaintiff, or those under whom he holds, without objection by any one. These witnesses lived in the neighborhood, and several of them were former owners of strip A.

" There was evidence that William Williams, when he owned the defendant's premises, once said he had a right of way across strip A, and that he did not know but he should use it some-time.

" There was other evidence offered by the plaintiff, tending to prove adverse possession of all rights of way and easements ; and other evidence was offered by the defendant tending to disprove the same, and under proper instructions the jury found that the right of way or easement had not been extinguished by adverse use.

" The plaintiff requested the court to instruct the jury : ' If Abram Williams, while owner of the defendant's premises, to wit, between April 9, 1800, and March 20, 1832, did not locate the right of way granted in Dwight's deed to him, by actual use or enjoyment thereof, but conveyed the same without such location by actual use or enjoyment, no right of way or easement passed by Abram Williams's deed to William Williams, nor subsequent grantees, unless the right of way conveyed by Dwight's deed to Abram Williams was at some time while Abram Williams owned the defendant's premises, necessary to the use and occupancy thereof.'

" The court did not so 'instruct the jury, but instructed them : ' That if the tract of land conveyed by Dwight to Abram Williams was then so situated that the owner thereof could not pass to and from the same without passing over the land of a stranger, then the right to pass and repass from the road that runs from Nehe-

miah Ide's to said Williams's, to the land above described upon the piece of land he had agreed to convey to Ide, was a right of way appurtenant to the land, and passed to the subsequent grantees of the land.' "

To the refusal to instruct as requested, and to the instruction given, the plaintiff excepted.

*H. J. Dunham & A. J. Waterman*, for the plaintiff.

*M. Wilcox*, for the defendant.

ENDICOTT, J. Both parties derive title to their respective lots from Henry W. Dwight, who in 1800 owned both. In that year he conveyed the lot now owned by the defendant to Abram Williams, together with the way in controversy, which he describes as a " right to pass and repass from the road . . . . to the land above described, upon the piece of land which I have agreed to convey to (Nehemiah) Ide, reserving a right to pass as aforesaid." The land which he had agreed to convey to Ide is the land now owned by the plaintiff. It is admitted that Dwight conveyed this land to Ide, though the deed cannot now be found. And it is to be presumed that in reserving the right of way over it he used in substance the same words used by Ide and his grantees, in the subsequent conveyances. In 1801, Ide conveyed it to Dickinson, " excepting and reserving a right to a bridle path or footway, on the north side of said strip, of four rods wide from the highway to land of Abram Williams." Between 1801 and 1859, this land was conveyed by deed seven times, and in every deed there is the like reservation in substantially the same words. In 1859, it was conveyed by Amos Dresser to the plaintiff, " excepting and reserving a right of way, on the north side of said land, to the heirs of the late William Williams, 2d." Abram Williams had in 1832 conveyed his lot to William Williams, 2d, by a deed which contained no reference to any way or easement. William Williams, 2d, died in 1854, intestate, and the premises were set off to his three daughters without any reference to the right of way. These daughters, in 1867 and 1869, conveyed the premises to the defendant by their separate deeds, and each of the deeds, in substantially the same language, also grants the right of way, " forever reserved to heirs of William Williams

2d, by deed of Amos Dresser to James Barnes, dated April 1, 1859."

It does not appear that at any time during this whole period from 1800 to the time of the alleged trespass by the defendant had the way been open and actually used by the Williamses or those claiming under them. The plaintiff claimed that the way had been extinguished by prescription; but the jury under instructions, not objected to, found that the way had not been extinguished by adverse user or prescription.

A right of way established by grant is not lost by mere non-user. Unless the non-user is a consequence of something which prevents the user, and is utterly inconsistent with its enjoyment, it continues to exist, although more than twenty years have elapsed. The facts stated in the report bring the case within this well settled rule. *White* v. *Crawford*, 10 Mass. 183. *Arnold* v. *Stevens*, 24 Pick. 106. *Jennison* v. *Walker*, 11 Gray, 423. *Bannon* v. *Angier*, 2 Allen, 128. *Owen* v. *Field*, 102 Mass. 90, 114.

The only question therefore to be considered is whether a well defined way was granted to Abram Williams, which was and still is by force of the grant appurtenant to the land now owned by the defendant.

The plaintiff asked the court to instruct the jury that unless Abram Williams, while he owned the premises, located the way granted to him in Dwight's deed by actual use or enjoyment, then no right of way or easement passed by his deed to William Williams, 2d.

This instruction was properly refused. If the defendant's case rested alone on the deed to Abram Williams, which gave only a right of way over the adjoining land without naming the purpose or use intended, or the precise portion of the land subjected to the easement, there would be much force in the plaintiff's claim, that it would not have passed after thirty-two years without location by use and enjoyment. But by the language of the deed of de to Dickinson and of the subsequent deeds, through which the land comes to the plaintiff, the purpose of the way is named, its use is distinctly indicated, and its location is definitely determined.

It is a footway or bridle path on the north side of the strip four rods wide. The grant to Williams is thus clearly and distinctly defined, and the way is therefore located by the deeds under which the plaintiff claims. A strip of land, wide enough for a bridle path or footway, on the north side of the lot, is thus subjected in terms to the easement. *Atkins* v. *Bordman*, 2 Met. 457. Where the way is clearly defined by grant or reservation, use and enjoyment are not necessary for its continuance, unless the failing to use is caused by something so adverse to the use as to prevent it. *White* v. *Crawford, supra*, and cases cited. The way therefore was appurtenant to the land when Abram Williams conveyed to William Williams, 2d, and passed by the deed without being mentioned in express words.

But the case does not rest upon the grant to Abram Williams alone, and the subsequent conveyances to the defendant. Under the rule established in Massachusetts a right of way may be established as appurtenant to land not only by express grant, but also by reservation in a deed of the tract over which the way is claimed, and will pass by deed of the land to which it is appurtenant without express words even. *Kent* v. *Waite*, 10 Pick. 138. *Underwood* v. *Carney*, 1 Cush. 285. *Bowen* v. *Conner*, 6 Cush. 132, 137. *Brown* v. *Thissell*, 6 Cush. 254, 257. *Goodrich* v. *Burbank*, 12 Allen, 459, 461. We have then a way appurtenant to the defendant's land reserved in a long line of conveyances, and in the deed itself under which the plaintiff derives his title; this way, though it has not been used, the jury has found not to have been extinguished by non-user; it therefore still exists as appurtenant to the defendant's land.

No question was made at the argument upon the ruling concerning a way of necessity, and as it has no bearing upon the case as presented to us, we have not considered it.

*Exceptions overruled.*