SULLIVAN S. JONES *vs.* ABNER H. ADAMS & another.

Worcester.     October 1, 1894. — October 18, 1894.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Deed — Reservation — Right of Drainage — Easement — Estoppel — Equity.*

A reservation in a deed of land from B. of "the right to use the drain across the easterly corner of said premises for the same purposes as heretofore used to said B., his heirs and assigns," the grantee covenanting with said B., his heirs and assigns, that he will allow said drain to remain open and to be used as heretofore, creates an easement of drainage, which passes by a subsequent deed from B. of the dominant land without express words.

A reservation in a deed of land of "the right to use the drain across the easterly corner of said premises" is not nullified by the fact that the drain empties into a cesspool on the servient premises, or by the fact that the line of the drain on the servient estate cannot be fixed without digging.

The covenants of freedom from encumbrances and of warranty in a deed of land, over which an easement of drainage has been reserved in the prior conveyance to the grantor, apply to the estate as subject to the right of drainage.

If the reservation of an easement in a deed is express, upon a bill in equity to establish the easement this court will not consider the doctrine of easements reserved by implication.

A reserved right of drainage through an existing drain is not destroyed by the fact that the drain was once enlarged at the joint expense of the owners of the dominant and servient estates.

An estoppel to claim a right of drainage is not necessarily established by proof of declarations by the person claiming such right, to the effect that he did not claim under a deed expressly conveying it; especially when there was no intention to mislead and no change of position on the part of the person setting up such estoppel, in consequence of such declarations.

A bill in equity to establish a right of drainage by an existing drain through land of another may be maintained, if the right is denied, although the drain has not been actually obstructed or stopped by the owner of such land.

BILL IN EQUITY, filed in the Superior Court on May 1, 1893, against Abner H. Adams and Betsey G. Adams, his wife, to establish a right of drainage over land of the defendants. Hearing before *Dewey*, J., who reported the case for the determination of this court, in substance as follows.

By deed dated August 1, 1866, Michael A. Blunt conveyed to one William Lawrence a portion of the premises now owned by the defendant Betsey G. Adams, " reserving the right to use the drain across the easterly corner of said premises for the same purposes as heretofore used to said Blunt, his heirs and assigns, and the grantee covenants with said Blunt, his heirs and assigns, that he will allow said drain to remain open and to be used as heretofore."

By deed dated July 8, 1867, Lawrence conveyed the same premises to Sarah E. Stewart, wife of James M. Stewart, subject to the same reservation as that expressed in Blunt's deed to Lawrence.

On September 1, 1868, one Leland conveyed to Sarah E. Stewart a parcel of land lying easterly of and adjoining the premises conveyed to her by Lawrence; and on October 1, 1872, Stewart and his wife conveyed to Betsey G. Adams the two parcels of land conveyed to Sarah E. Stewart by the deeds of Lawrence and Leland to her. This was a warranty deed with full covenants, and contained no reference to the drain.

By deed dated September 19, 1866, Blunt conveyed to the plaintiff a parcel of land adjoining that owned by Betsey G. Adams, with the privileges and appurtenances thereto belonging, and with full covenants of warranty, but the deed contained no reference to the drain or right to drain. All the deeds were duly recorded.

On the plaintiff's premises at the time of the conveyance to him there were, and still are, two dwelling-houses and various out-buildings. During his ownership he has occupied one of the houses with his family and a tenant, and the other has been occupied by tenants.

When the plaintiff took his deed from Blunt there were in actual use drains from his two dwelling-houses, uniting together on his land, and then as a single drain passing from his land into and upon the premises now of Betsey G. Adams, then owned by Lawrence. It was a stone drain on the plaintiff's land, and covered by about three feet of earth. The ends of the drain were visible in both the cellars of his houses. The course of the drain on the land of Betsey G. Adams was not visible. The drain on the plaintiff's land has been twice dug open by him down to the line of Betsey G. Adams's land, and the drain could be seen extending into her land, but it was not dug open by him on that land. The general course or direction of the drain on his land and on her land was pointed out to him before he took his deed.

In 1867, Stewart, acting for his wife, thought the drain, as it was on her land, was not large enough, and it was taken up by him, enlarged, and rebuilt. This drain was connected with and used by the Stewarts for the benefit of some of their buildings. By an arrangement with Stewart, the plaintiff paid a certain sum towards the expenses of reconstructing the drain.

The defendants not only deny the plaintiff's right of drainage in and upon their premises, but deny that there is or has been any drain in fact leading from his premises through and upon theirs. If there was any such drain, it did not appear to be disputed that it connected with a cesspool located at some point on land of Betsey G. Adams.

The judge stated in relation to this subject:

" I am unable to determine where the line of the drain on the defendant's land was located when the plaintiff took his deed, and where it is located now. Neither can I determine where the cesspool was situated with which it connected then, nor where is the cesspool with which it is connected now, but I am satisfied, and find as a fact, that when the plaintiff took his deed there was and ever since has been a drain in actual use leading

from the cellars of the plaintiff into the premises of the defendant Betsey G., and connecting with a cesspool located somewhere on the premises of the defendant Betsey G. described in the plaintiff's bill. I find the use of the drain is of great convenience and importance to the premises of the plaintiff, and that, owing to the grade and nature of the soil and the size of his premises, it is not practicable for him to construct cesspools on his own land, and that there is no public drain or sewer, or other rightful way of drainage, available to him. I find that neither of the defendants has intentionally or otherwise obstructed or stopped the drain claimed by the plaintiff on land of said Betsey G. I find that in 1873 there was an obstruction of the drain on land of said Betsey, and that the plaintiff went on the premises with men to open the drain by digging, and said Abner H., acting for his wife and himself, denied the plaintiff's right to dig and open the drain, and refused to allow him to do so, and the plaintiff and his men withdrew without opening the drain. The obstruction seemed to be but temporary, and after a little time the water flowed away from the plaintiff's premises, and there has been no serious trouble since with water in the plaintiff's cellar till about December, 1892."

In December, 1892, the drain was again obstructed on the premises of Betsey G. Adams, and the water was in the cellars on the plaintiff's premises for several months, at times varying in depth from seven inches in some places to two feet in others. From early in April until the middle of May, 1893, the plaintiff pumped the water from his cellar three or four times a day. There was a drain from a sink in his house to connect with the drain running from his cellar, and by the obstruction the sink water was set back into the cellar. The result was that his cellars were rendered muddy, wet, and unwholesome.

There was no examination by Betsey G. Adams, or by any one for her, of the title to her premises before she took her deed, and she had no knowledge in fact of the reservation in the deed from Blunt to Lawrence. Abner H. Adams testified that, after he and his wife had purchased the premises now owned by her and were occupying them, but before she had received her deed and paid the price, he had heard something about the plaintiff's drain ; that he inquired of the plaintiff if he had any right to drain

across the premises ; and that the plaintiff said he did not claim to have any legal right to drain, and that Stewart put in a drain and he ran his drain into it.

John Q. Adams, a brother, testified to the same effect in regard to the interview. Another brother, Zebadiah A. Adams, testified to substantially the same statement as that made by the plaintiff when he came on to the Adamses' premises in 1873 to open the drain as hereinbefore stated. The plaintiff testified that he never had said to Abner H. Adams that he did not claim a legal right to drain across the Adamses' land.

The judge further stated :

" I am satisfied that neither the defendants nor the plaintiff intended to give other than a true account of what was said, but that there was some confusion in their understanding and memory between having a right in law to drain, and having a deed conveying the right, and that the plaintiff intended to give the idea that he did not claim a right to drain under a deed expressly conveying the right to drain, but did not disclaim having any right. I find that the plaintiff had no intention to mislead Adams in what he said to Adams on this subject at the interview prior to Mrs. Adams's taking her deed. If the plaintiff is entitled to damages, I assess them in the sum of one hundred dollars."

*S. H. Tyng*, for the plaintiff.

*T. G. Kent*, for the defendants.

ALLEN, J. This case presents no question of difficulty. On the facts reported, the plaintiff is entitled to a decree, enjoin, ing the defendants from preventing him from clearing out the drain. An easement of drainage was created by the reservation ; *Claflin* v. *Boston & Albany Railroad,* 157 Mass. 489, 493; and it passed by the deed to the plaintiff without express words. *Barnes* v. *Lloyd,* 112 Mass. 224.

The various suggestions and arguments of the defendants may be briefly dealt with.

The defendants contend that the plaintiff must prove that there was a drain across the easterly corner of the granted premises, and that said drain still exists, and that it had been used to drain the cellars of the two buildings on the plaintiff's lot. That is so; but all this appears by the finding of the judge. The

fact that the judge could not fix the line of the drain on the defendants' land, or the situation of the cesspool, does not show that no drain or cesspool existed. There is no reason to suppose that there were two drains across that corner of the defendants' lot, and the plaintiff by digging on his own land can ascertain where the drain enters the defendants' land, and its further course can be traced by digging, without undue disturbance of the defendants' other land.

The defendants contend that the reservation is of a right " to use the drain across the easterly corner " of the lot, and that the right now claimed is different, viz. to use a drain which ends in a cesspool on the defendants' premises. If it were conceded that by the correct use of English the words " across the easterly corner " imply that the drain emptied at or beyond the farther line of the lot conveyed, so trivial an error in strictly exact phraseology would not nullify the reservation of the easement.

The covenants of freedom from encumbrances and of warranty apply to the estate as granted, i. e. subject to the right of drainage. *Wood* v. *Boyd*, 145 Mass. 176. *Brown* v. *South Boston Savings Bank*, 148 Mass. 300, 304.

The reservation being express, there is no occasion to consider the doctrine of easements reserved by implication.

The enlargement of the drain by Stewart during his ownership, which was made at the joint expense of himself and the plaintiff, did not destroy the identity of the drain, nor defeat the plaintiff's right to use it.

The findings by the judge negative the idea of an estoppel upon the plaintiff to assert his right to use the drain.

The evidence sufficiently shows a denial by the defendants of the plaintiff's right.

*Decree for the plaintiff.*