(139 App. Div. 393.)

HARRIS v. CURTIS et al.

(Supreme Court, Appellate Division, Third Department. June 29, 1910.)

1. WATERS AND WATER COURSES (§ 156*)—RESERVATIONS—RATIFICATION—CONSTRUCTION.

Where the grantor of mill property which was a part of a farm reserved to himself the right of taking out water from the millpond through a trunk not exceeding in size a circular tube of 30 inches in diameter on the inner side, which could be used for the purpose of driving any machinery excepting a sawmill, etc., it must be assumed that he had the right to make the reservation for the benefit of the farm which contained land on the river below upon which a structure might be erected, but which was insufficient for the development of a water power, especially where the grantee in deeds and mortgages made by him inserted the reservation by reference to the deed in which it was contained.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 178; Dec. Dig. § 156.*]

2. TAXATION (§ 507*)—LIEN—PROPERTY COVERED BY.

The right to a water power and to draw water for that purpose being a right respecting land which can be conveyed or reserved in the form of an easement, where land was subject to such an easement, taxes assessed to the owner of the land were a lien on the servient estate only.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 937–941; Dec. Dig. § 507.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. EASEMENTS (§ 21*)—CHARGE UPON ESTATE—CONVEYANCE—EFFECT.

Easements are a charge upon the estate of the owner of the servient tenement, and follow such estate into the hands of those to whom the servient tenement is conveyed.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 59; Dec. Dig. § 21.*]

4. EASEMENTS (§ 24*)—BY GRANT—TRANSFER—EXPRESS WORDS.

Where an easement is held by grant, a conveyance of the dominant estate to which it is attached transfers the easement without any express words.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 64–69; Dec. Dig. § 24.*]

5. EASEMENTS (§ 30*)—BY GRANT—NONUSER.

An easement acquired by grant and being a freehold interest is not lost by nonuser

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 77–79; Dec. Dig. § 30.*]

6. EVIDENCE (§ 579*)—EVIDENCE IN FORMER SUIT—IDENTITY OF ISSUES.

In partition, where the existence of an easement to draw water from a millpond on an adjoining mill site was in issue, evidence of a witness in an action between the predecessors in interest of the parties, as to the fall of the river and head which could be obtained, was inadmissible, where the prior suit did not involve the issue as to the easement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2412; Dec. Dig. § 579.*]

7. APPEAL AND ERROR (§ 1056*)—HARMLESS ERROR—EVIDENCE—DECLARATIONS AGAINST INTEREST—MATERIALITY.

In partition, where the existence of an easement to draw water from a millpond on an adjoining mill site was in issue, any error in excluding evidence of a former owner of the mill site as to the servitude of drawing water from his pond, given in an action between the predecessors in interest of the parties, if a declaration against interest and competent, was immaterial; there being no dispute as to the original existence of the easement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4188; Dec. Dig. § 1056.*]

8. PARTITION (§ 74*)—EASEMENTS—BED OF RIVER—TITLE.

In partition, where the existence of an easement to draw water from a millpond on an adjoining mill site was in issue, it was immaterial to plaintiff whether the people of the state owned the bed of the river at that point, and if defendants have unlawfully built a mill and dam opposite his shore land it is only by another action and in another form that its removal could be compelled.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 209; Dec. Dig. § 74.*]

9. APPEAL AND ERROR (§ 1152*)—POWER TO MODIFY JUDGMENT.

In partition, where the existence of an easement to draw water from a millpond on an adjoining mill site was in issue, and the reservation of the easement was a matter of record, and there was no dispute concerning it, and the trial court found that it once existed, but wrongly concluded that it had been extinguished, the court on appeal has power to order a modification of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4483; Dec. Dig. § 1152.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Warren County.

Action by John C. Harris against Warren Curtis and others. From an interlocutory judgment in favor of defendants, the plaintiff appeals. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Nash Rockwood, for appellant.

James McPhillips, for respondents.

PER CURIAM. The action is brought to partition a farm situated on the east bank of the Hudson river in the county of Warren, designated as the "Ferry Farm." The rights of the parties in the farm itself were stipulated on the trial. At an early day the owners of the farm had conveyed to a third party two separate parcels containing three or four acres of shore land, together with water rights, upon which was installed a sawmill, which came to be known as the "Mott Mill," and which was carried away by a flood in 1858. The water power remained idle from that time until about 1905, when one of the defendants erected a dam and electric power plant, as he claims upon the old site. The plaintiff asserts that the old mill was further up the stream, and its exact location was the point in controversy on the trial, and was important because the lower line of the farm extends only a short distance below the mill site, and not a sufficient distance for the development of another water power if the present electric light plant is located where the old mill stood.

From a careful review of the evidence we are satisfied that the learned trial court correctly found that the present structure is substantially on the site of the Mott mill. We think he was in error, however, in his conclusion that the easement appurtenant to the Ferry farm to take water through a circular tube 30 inches in diameter from the Mott mill pond was destroyed by the tax sale of the mill property, or that such property was relieved from such servitude through conveyance to the defendants by the comptroller of the state.

One Charles Carpenter owned the Ferry farm in 1850. He also held title to the Mott mill property. The south line of the farm extended only about 100 feet down the river beyond the south line of the mill property. On the 24th of August, 1850, he conveyed the mill property to one Hogle and made the following reservation:

"Saving and reserving to the said Charles Carpenter, his heirs and assigns forever, the right and privilege of taking out water from the millpond of said mill on the premises hereby conveyed, in a square or circular trunk not exceeding in size a circular tube of thirty inches in diameter on the inner side, and to be laid along the east side of said sawmill's flume on a level with the head gates of said sawmill at the point where it passes said head gates; which water may be used for the purpose of driving any machinery excepting a sawmill and to be used only upon this express condition that the said Charles Carpenter, his heirs or assigns, shall before such use pay to the said Hogle, his legal representatives or assigns, the sum of fifty dollars; and thereafter be at one-half the expense of keeping erected and in repair the dam and such fixtures in the said river as shall be necessary to secure a full supply of water for such sawmill and other machinery as may be driven by the water from the pond created by said dam."

This deed was recorded September 23, 1850, and was accompanied by another deed not recorded, from himself and one Aldrich also to Hogle, in which the reservation is mentioned and the language quoted. It does not clearly appear how Carpenter acquired title to the mill property, except that he and Aldrich were assignees for the benefit of creditors by assignment from Hogle, and that Hogle brought an action compelling them to reconvey to him, and both deeds recite that the conveyance was made in pursuance of a decree of the court. From the recitals in the deed it must be assumed that Carpenter had the right to make the reservation for the benefit of the Ferry farm which contained land on the river below upon which a structure might be erected but which was insufficient for the development of a water power. Especially is this so, because in the year following Hogle conveyed an undivided half interest in the mill lot to Albert T. Harris in which he expressly excepted the reservation which Carpenter had made and referred to the deed which he had received from him in which it was contained, and subsequently gave a mortgage on his remaining half, as did the grantee of Harris, in both of which the exception of the reservation was specified. Whatever Carpenter's title may have been, and however he may have had the right to make the reservation, it was acquiesced in and ratified by Hogle and his grantees, and the purchasers under the mortgages which were subsequently foreclosed took the property subject to the servitude of the easement. So far as the mill lot was concerned, therefore, the easement of the right to take water as specified was impressed upon it as a servient estate, and neither Hogle nor the subsequent purchasers under foreclosure who permitted the property to be sold for taxes had any title except with the servitude attached.

The taxes assessed were only on the interest of the owners in the land. The easement with which it was burdened was not a lien which the taxes took priority over. The right to a water power and to draw water for that purpose is a right respecting land and can be conveyed or reserved in the form of an easement. 2 Pingrey on Real Property, § 1403. Easements are a charge upon the estate of the owner of the servient tenement and follow such estate into the hands of those to whom the servient tenement is conveyed. Hills v. Miller, 3 Paige, Ch. 254, 24 Am. Dec. 218. The fact that the purchasers at the foreclosure sale permitted the land to be sold for nonpayment of taxes did not relieve the land of the easement or destroy the servitude which the original grantor had placed upon it.

But the defendants insist that, even though the tax sale did not destroy the easement, neither Carpenter nor his heirs ever parted with it, and that it did not pass with the conveyance of the Ferry farm because it was not mentioned in the deed. Carpenter died owning the farm, and his heirs conveyed it to Harold J. and William C. Buttolph, taking back a purchase-money mortgage through the foreclosure of which title came to the present owners. This deed did not specifically mention the easement to take water from the millpond. The record contains only an abstract of the deed; but the appellant's brief states, and we assume correctly, that it conveyed the farm "with the appurtenances and all the estate, title, and interest therein of the said

party of the first part," and that the mortgage contained the same words. It was not necessary to specify the easement in the deed of the farm, for, if it was attached to it by reason of Carpenter's ownership of both parcels, when he conveyed the mill lot to Hogle and reserved the right for the benefit of the farm, it passed with a conveyance of the farm because it was a part of the real property conveyed. The easement was not one of necessity nor one of appurtenance in use at the time of the conveyance, but was an easement by reservation which amounted to a grant. Where an easement is held by grant, a conveyance of the dominant estate to which it is attached transfers the easement without any express words. 2 Wash. on Real Prop. (6th Ed.) § 1234; Barnes v. Lloyd, 112 Mass. 224; Jones v. Adams, 162 Mass. 224, 38 N. E. 437; Wolfe v. Frost, 4 Sandf. Ch. 73; Provost v. Calder, 2 Wend. 517. The easement having been acquired by grant, and being a freehold interest, was not lost by nonuser. Pope v. O'Hara, 48 N. Y. 446; Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896, 18 L. R. A. 535. The language of the opinion in Root v. Wadhams, 107 N. Y. 384, 14 N. E. 281, upon which the defendants rely, was employed with reference to appurtenances in use or of necessity as distinguished from easements obtained by grant.

There was no error in the refusal to admit the case on appeal in Carpenter and Jones v. Buttolph in evidence. That action was merely a foreclosure of a mortgage on the Ferry farm. There was no issue raised respecting the mill lot. The evidence of the engineer as to the fall of the river and head which could be obtained was not respecting any issue raised, but simply to show the situation and value of the farm, and as to the present defendants was hearsay. To be sure, Mott, the then owner of the mill site, testified to the servitude of drawing water from his pond; but if what he said was a declaration against interest, and therefore competent evidence, the error in excluding it was immaterial, for there was no dispute on the present trial of the original existence of the easement.

Nor is it material so far as the plaintiff is concerned whether the people of the state own the bed of the Hudson river at the point in question. If title is in the people, it is not in him, and the bed does not belong to the farm. If the defendants have unlawfully built a mill and dam opposite his shore land, it is only by another action and in another form that their removal can be compelled.

The reservation of the easement was matter of record, and there was no dispute concerning it. The court found that it once existed, but wrongly concluded that it had been extinguished. It is not necessary, therefore, for us to send this branch of the case back for a retrial, for we have the power to order a modification of the judgment. The interlocutory judgment appealed from should be modified by inserting a provision therein that there is attached to the farm an easement of the right to take water from the millpond at the Mott mill site equivalent to or through a circular tube not exceeding 30 inches in diameter on the inner side, on complying with the conditions of the reservation contained in the deed from Carpenter to Hogle, and, as so modified, affirmed, without costs of appeal to either party.