**E. R. BROWN, et al., v. NORTH ST. LUCIE RIVER DRAINAGE DISTRICT, et al.**

10 So. (2nd) 910                                            June Term, 1942
December 18, 1942                                        Special Division A
Rehearing Denied January 7, 1943

*Carlton & Ellis,* for appellants.

*Walker Liddon* and *Liddon & Fee,* for appellees.

BUFORD, J.:

Two drainage districts were created in St. Lucie County, Florida, under the provisions of Chapter 6458, Acts of 1913.

One was Fort Pierce Farms Drainage District and the other was the North St. Lucie River Drainage District. The former joins the latter on the north. There is no question about the legal creation of the districts. Fort Pierce Farms Drainage District was placed in the hands of a Receiver in proceedings instituted in the Circuit Court of St. Lucie County. Owners of lands lying outside either district proceeded under provisions of Section 48 of Chapter 6458, supra, to acquire the right to use the drainage ditches within the districts. The Circuit Court entered an order allowing the Receiver of Fort Pierce Drainage District to grant the easement. The Supervisors of the North St. Lucie River Drainage District on August 4th 1939, adopted a Resolution which, after reciting several preambles, contains the following:

"Whereas the said Elmer Robb, as Engineer of this District has approved the proposed plan, all of which as it set out by Section 48 of Chapter 6458 Acts of 1913, being Section 1502 of the Compiled General Laws of Florida, 1927, and Whereas, the Board of Supervisors or the North St. Lucie River Drainage District determining that the connection with the said laterals and North Emergency Relief Canal and lowering the flood waters against the north and west dikes of the North St. Lucie River Drainage District will be greatly beneficial to the said District in relieving the flood water hazards to the dikes of the said District and will save the District large 'sums of money which would be necessary to maintain the dikes and levees of the said District, and will not in any way interfere with the drainage of the canals and ditches of the said District so long as used as proposed.

"Therefore Be It Resolved By the Board of Supervisors of the North St. Lucie River Drainage District that the owners of those certain lands lying west of the North St. Lucie River Drainage District, and north of State Road No. 162, and those certain lands lying north of the north dike of the said North St. Lucie River Drainage and west of the Ft. Pierce Farms Drainage District, be and they are hereby granted permissions, leave and license to connect with lateral No. 42 of the North St. Lucie River Drainage District; to clean, deepen and enlarge same and connect same with the

North Emerency Relief Canal of the North St. Lucie River Drainage District at a point at or near the northwest corner of Section 5, Township 35 South, Range 40 East, where the said Emergency Relief Canal turns from a westerly direction to a south-westerly direction, to be used by the owners of said lands, their grantees, executors, heirs and assigns, so long as said laterals shall be properly maintained by the said owners of said lands, and used and the waters therein controlled in such a manner so as not to overflow, hinder, harm or in any way damage any of the lands within the North St. Lucie River Drainage District, or any of the lands draining into the Said North Emergency Relief Canal.

"Meeting then adjourned.

(K. L. Carlton)
President Protem

" (Bess H. Overstreet)
"Asst. Secretary."

Thereafter the owners of the lands outside of the district constructed their drainage ditches and connected the same with ditches already existing as per the terms of the easements above referred to and as outlined in the Resolution, supra. They also constructed a lock with which to control the flow of the waters.

In February of 1941, the outside land owners under agreement with the Supervisors of North St. Lucie River Drainage District turned over the control of the lock to the Supervisors and shortly thereafter the lock was so damaged (and we glean from the record that the damage was caused by vandalism) that it could not be used effectively for the control of the waters and thereupon the uncontrolled waters draining off of the outside area over-flowed the lands within the District. While the lock remained in its damaged condition the defendant Supervisors threatened to throw a dam across the ditch on the lands of the plaintiff and thereupon the plaintiffs on November 5th 1941, exhibited their bill of complaint in the Circuit Court of St. Lucie County seeking to enjoin the construction of a dam on plaintiff's land. While that bill was pending and before any order of the court had been made

thereon, stipulation was entered into between the parties in which, after recitation of preambles, it was stipulated:

"1. That the Complainants will begin the immediate repair of the locks at the west end of the Belcher Canal, and will have the said Belcher Canal and the locks therein repaired to the extent that the said locks will control the water in the said Belcher Canal within two weeks from the date hereof. That if the said locks are not repaired so that the same will absolutely control the said waters of the Belcher Canal within two weeks from the date hereof, the Complainants agree that they will dam the said Belcher Canal within the said two weeks time. That upon the repair of the locks aforesaid, same shall be in the control, at all times, of the Board of Supervisors of North St. Lucie River Drainage District.

"2. It Is Further Stipulated and Agreed that the complainants will continue with the matter of obtaining another outlet for the Belcher Canal so that same does not connect with any canal or lateral of the North St. Lucie River Drainage District, with all convenient speed, and see that same is constructed as soon as same reasonably may be done. But no rights of the North St. Lucie River Drainage District, heretofore or hereafter acquired, in regard to the control, or prevention of the flow, of the water through the Belcher Canal into the North St. Lucie River Drainage District shall be affected in any manner whatever by this Stipulation. And, this Stipulation is entered into merely for the purpose of having the Complainants put the water of the Belcher Canal immediately under control of the Board of Supervisors of North St. Lucie River Drainage District so that same can be controlled in a manner so as not to injure or damage property in the North St. Lucie River Drainage District for a reasonable time within which the Complainants may obtain another outlet for the waters of the Belcher Canal, and the rights of the parties hereto and the right of the Defendant District to prevent the said flow of water, by dam or otherwise in case of damage to gates, locks, or whenever same, in their opinion, becomes necessary shall not be affected hereby.

"It Is Further Stipulated and Agreed that the above cause

remain open subject to the filing of further pleadings or the right of either party to give notice of final hearing therein, or until further order of the Court."

It appears that things remained in status quo until about March 7th, 1942, when defendants put a fill or dam in the Canal at a point near where the Canal flows into what is known as North Emergency Relief Canal. Thereupon the complainants on March 9th 1942, filed their amended bill of complaint, wherein they prayed:

"That a mandatory Injunction do immediately issue to the Defendants, ordering and directing them to remove from the east end of said canal all dam, dirt and other obstructions thereon placed by them; and further restraining and enjoining the defendants from interfering with the drainage system of these complainants in any manner whatsoever, other than is provided by the easement granted in this cause."

Answer was filed to the original bill and also to the amended bill. Testimony was taken and on final hearing decree was entered enjoining the defendants from entering upon the lands of the complainant E. R. Brown lying outside of North St. Lucie River Drainage District as described in the original bill and from anywise trespassing upon said land, but denying the application for injunction in all other respects. Parts of both answers were stricken. As to this part of the decree there appears to be no challenge.

Mandatory injunction as prayed in the amended and supplemental bill of complaint was denied. From this decree complainants appealed.

When the owners of lands outside the district accepted the easements granted under the provisions of Sec. 48 of Chapter 6458, Acts 1913, now Sec. 298.28 Fla. Statutes, 1941, as set forth in the Resolution quoted hereinabove, they accepted the burdens of the conditions therein named. Those conditions were that the easement should be used by the owners of the lands outside the district, their grantees, executors, heirs and assigns, so long as said laterals shall be properly maintained by the said owners of said lands, and used and the waters therein controlled in such a manner so

as not to over-flow, hinder, harm, or in any way damage any of the lands within the North St. Lucie River Drainage District, or any of the lands draining into the said North Emergency Relief Canal.

The complainants plead the contract as the basis of their rights in the premises and alleged that they had complied with all the terms of the contract.

The defendants (after a plea of ultra vires as to the contract had been stricken) filed answers alleging that plaintiffs had failed to perform the obligations of the contract in that they had failed to do those things which the contract required them to do with reference to the control of the waters as above stated, and, in effect, alleged that by reason of the failure of the plaintiffs to so perform their said obligation, the water coming through the ditches which had been constructed outside the Drainage District by the land owners and connected with the ditches within the Drainage District, overflowed the lands within the Drainage District and had caused and was then causing great damage to the defendants; and that the defendants had found it necessary to throw a dam across the drainage ditch, as was alleged in plaintiffs' amended and supplemental bill of complaint, so as to stop the flow of the water coming through plaintiffs' ditch on to defendants' lands.

Thus, the burden was on the plaintiffs to show that they had complied with the terms of the contract.

The rights and obligations of the respective parties were fixed by the terms and conditions of the grant of the easement (referred to as the contract). It is, therefore, not needful that we discuss what the rights and obligations of the parties might have otherwise been. The parties being sui juris, it is elementary that they are bound by the terms of their contracts.

So the controlling question is whether or not the evidence is such that it clearly appears that the chancellor was not justified in entering decree denying mandatory injunction. We are unable to reach the conclusion that error clearly appears in this regard. This issue was clear and simple and was ruled by elementary principles of law which are so well

established as to require no citation of authorities in support thereof.

It does appear, however, that plaintiffs have not forfeited all right to enjoy the benefits flowing to them under the terms of the contract if and when they perform the obligations of the contract by so constructing and maintaining the locks, laterals and ditches and so control the waters therein in such manner so as not to overflow, hinder, harm or in any way damage any of the lands draining into the said North Emergency Relief Canal.

Therefore, the decree should be so modified as to be without prejudice to the complainants to renew their application when and if within a reasonable time, to be fixed by the Court in such modification, they perform the obligations of the contract by so constructing and maintaining the locks, laterals, and ditches and so control the waters therein in such a manner so as not to overflow, hinder, harm or in any way damage any of the lands within the North St. Lucie River Drainage District, or any of the lands draining into the said North Emergency Relief Canal.

When so modified, the decree will stand affirmed.

So ordered.

BROWN, C. J., WHITFIELD and CHAPMAN, JJ., concur.