99 So.2d 248 (1957)
DeWitt ALBURY and Lois Albury, His Wife, Appellants,
v.
CENTRAL AND SOUTHERN FLORIDA FLOOD CONTROL DISTRICT and Three Bays Improvement Co., a Florida corporation, Appellees.
No. 57-67.
District Court of Appeal of Florida. Third District.
December 2, 1957.
Rehearing Denied January 10, 1958.
*249 Samuel D. Wallace and John E. Kirk, Miami, for appellants.
Robert M. Sturrup and Charles H. Gautier, Miami, for appellees.
PEARSON, Judge.
This case is before the Court on an interlocutory appeal. The appeal is taken from an order denying the plaintiffs' motion for a summary final decree. Ordinarily an appellate court will not review an order denying summary decree or judgment. In this case we do not pass upon the propriety of the denial, but are concerned with that portion of the order which settled the law of the case, pursuant to Florida Rules of Civil Procedure 1.36(d), 30 F.S.A. No error having been demonstrated the order appealed from is affirmed.
In 1850 the Congress of the United States passed an act, known as the Swamp Land Act. The pertinent sections of that Act affecting the instant problem are Rev. Stat. §§ 2479-2481, 43 U.S.C.A. §§ 982-984, which sections granted to the State of Florida swamp and overflow lands therein for the purpose of building necessary levees and drains; and further provided that any funds realized by the state from the sale of these lands would be used for reclaiming said lands, by means of levees and drains. On January 6, 1855, Governor Broome signed an act to provide for and encourage a liberal system of Internal Improvements in this state. Chapter 610 Laws of Florida 1854-55. This act (§ 1) created the Internal Improvement Fund and the power of administering the Fund was vested in five Trustees (§ 2). Sections 253.01, 253.02, Fla. Stat., F.S.A., are derived after several intermediate revisions from Chap. 610, supra. Thus the lands granted this state by the Swamp Land Act of 1850 came within the control of the Internal Improvement Fund by legislative enactment.
On May 28, 1910, the Trustees of the Internal Improvement Fund conveyed a *250 large tract of land in Dade County to one Richard J. Bolles, reserving unto themselves the following rights:
"Saving and Reserving unto the said, the Trustees of the Internal Improvement Fund of the State of Florida, and their successors, the right at any time to enter upon the said lands and make or cause to be made and constructed thereon such canals, cuts, sluice-ways, dikes and other works as may in the judgment of the said Trustees, or their successors, be necessary and needful for the drainage or reclamation of any of the lands granted to the State of Florida, by Act of Congress, approved September 28th, 1850, and to take from the said lands hereby conveyed and to use such gravel, stone or earth as may, in the judgment of the said Trustees, or their successors, be necessary to use in the making and construction of said canals, cuts, sluice-ways, dikes and other works upon said lands for the purposes aforesaid."
This deed was placed on record the 5th day of July 1910. On January 8, 1940, the plaintiffs acquired fee simple title to certain property which was part of the lands covered by the deed to Bolles. They are in open possesion of their land and deraign their title by mesne conveyances from Bolles.
The defendant, Three Bays Improvement Co., as the agent of the defendant Central and Southern Florida Flood Control District, entered upon plaintiffs' lands on or about February 18, 1957 and began digging soil and rock from plaintiffs' lands for the purpose of constructing a canal. The Central and Southern Florida Flood Control District is a public corporation created by Chapter 25270, Laws of Florida 1949, for the purpose of carrying into effect Chapter 25209, Laws of Florida 1949 (Chapter 378 et seq. Fla. Stat., F.S.A.). The latter Chapter defined the activities of Flood Control Districts in this state.
On October 22, 1956, the rights in the reservations enumerated in the Bolles deed were assigned from the Trustees of the Internal Improvement Fund to the Central and Southern Florida Flood Control District. This assignment was pursuant to the following provision of law:
"When it is found to be in the public interest and for the public convenience and welfare, and for the public benefit, and necessary for carrying out the works of improvement of any flood control district referred to in this chapter for the protection of property and the inhabitants in said district against the effects of water, either from its surplus or deficiency, and for assisting said district in acquiring land for the purposes of said district at least public expense, any state agency, any county, any drainage district, any municipality or any governmental agency or public corporation in this state holding title to land, is hereby authorized, in the discretion of the proper officer or officers, the county commissioners of any county, or the governing board of any agency referred to in this section, to convey the title to or to dedicate land, title to which is in such agency, including tax reverted land, or to grant use rights therein to any flood control district created under any law enacted by the legislature at its 1949 session.
"The land to which this section shall apply shall be located within the boundaries of said flood control district." Chapter 25213, § 1, Laws of Fla. 1949, (§ 378.46(1) Fla. Stat., F.S.A.).
The Bill of complaint in this cause alleged an unlawful invasion of the plaintiffs' lands, prayed an injunction and that a jury be impaneled for the purpose of setting compensation for the property which the defendants had appropriated, together with other collateral relief. The defendants filed an answer which set out the reservations and the assignment of the same, and alleged *251 that they were in possession of the property for the purpose of excavating a canal which is part of the Central and Southern Florida Flood Control District's plan of improvement in Dade County.
Depositions were taken and plaintiffs moved for the entry of a summary final decree. The court by its order found as follows:
"1. That Plaintiff's Motion for Summary Judgment and Final Decree be, and the same is, hereby denied. The Court is of the opinion that the reservations contained in the 1910 deed to Bolles from the Trustees of the Internal Improvement Fund are valid and were properly assigned to the Defendant Flood Control District in 1956, and that said Defendant is considered a "successor" to the said Trustees for the purpose of effectuating the purposes originally vested in the said Trustees relating to flood control and reclamation of overflowed lands.
"2. That there remains, however, a material issue of fact as to the use to which the said Defendant put the material removed from Plaintiff's lands. Said Defendant does not hold the fee title to this material, but only the right "to go upon the land conveyed thereby to better the same in common with other similar and adjacent lands by drainage." See Richardson-Kellett Co. v. Kline, 70 Fla. 23, 69 So. 203. The allegations of the Complaint are that said Defendant used or caused to be used this material for a purpose other than that which is `necessary to use in the making and construction of said canals, cuts, sluice-ways, dikes and other works upon said lands for the purposes aforesaid.' (See reservation in 1910 deed) To the extent that said material, if any, was otherwise used, the Plaintiff's are entitled to compensation as provided by law."
The appellants present for our consideration twenty-two assignments of error, which are argued under eleven points. Fundamentally they may all be discussed under three questions:
(1) Are the reservations involved sufficient to authorize the construction of a canal without compensation for damage to the fee?
(2) Is the Central and Southern Florida Flood Control District the successor of the Trustees of the Internal Improvement Fund within the meaning of the reservations?
(3) Is the holder of the reservations equitably estopped from asserting its rights thereunder, by the lapse of forty-six years in which time plaintiffs' land was subdivided and improved?
The purposes for which the reservations were made are defined by the Supreme Court in Richardson-Kellett Company v. Kline, 70 Fla. 23, 69 So. 203-208:
"* * * In execution of its trust this state board of trustees are now, and were at the time of the conveyance of the land in question to the grantors of the appellee, engaged in the vast and costly work of draining the said Everglades, and when they sold any part of the said Everglades land in advance of the drainage thereof, it was a wise precaution on their part, charged as they were with the duty and expense of reclaiming the same by drainage, to reserve in their deeds conveying the same the right to go upon the land conveyed at all times, but solely for the purpose of the betterment thereof by drainage in the proper exercise of their trust. * * *."
Chapter 25209, Laws of Florida 1949, sets forth that the purpose of a flood control district organized under this chapter shall be to cooperate with any project authorized by the Congress of the United States in the interest of flood control, reclamation, conservation and allied purposes. It therefore appears that the purposes for which the Central and Southern Florida Flood Control District were created are broad *252 enough to encompass the purposes for which the reservations were made. In the absence of a showing that the particular purpose the District here seeks to accomplish is beyond the purpose of the reservations, we must hold that the reservations involved are sufficient to authorize construction of the canal. The appellant urges that these reservations amount only to a right of entry without right to construct a canal. Such a construction is strained and against reason. We are dealing here with an easement created by words of expressed reservation in a deed. Brown v. North St. Lucie River Drainage Dist., 152 Fla. 107, 10 So.2d 910, 913; Jones v. Adams, 162 Mass. 224, 38 N.E. 437; Olson v. St. Paul M. & M. Ry. Co., 38 Minn. 479, 38 N.W. 490, 491; 3 Farnham, Waters and Water Rights 2386 (1904). The easement is for an artificial water course. The right to construct cannot be abridged by a requirement for compensation to the fee, which abridgment in no way appears in the reservation.
Government exists for functional purposes. All during the course of the nation's history, governmental functions have been transferred from one agency to another. To have a rule of construction which would obviate the transfer of functions from one agency to another would serve no purpose and would merely thwart all efforts to improve government. Having decided, as we have above, that the purpose to be accomplished under the Trustees and under the Flood Control District must be presumed to be the same, it therefore follows that one may be the successor in purpose of the other. One succeeds who follows or takes the place another has left and sustains the like part or character. Black's Law Dictionary (4th Ed. 1951), Beatty v. Ross, 1 Fla. 198, 209.
There is nothing in the record to suggest that the appellee Flood Control District or its predecessor, have in any way repudiated the right to act on the reservations in question. The uses made of the land by the fee owners are normal uses, thoroughly consistent with the existence of the reservations which were apparent in their record title. Said reservations constitute an inseparable incident and burden of ownership of such land. Dopps v. Alderman, 12 Wash.2d 268, 273, 121 P.2d 388, 391. Equitable estoppel must be mutual and consists of action leading another party to act to his detriment. White v. Croker, 5 Cir., 13 F.2d 321, 324. Simple non use of the reservation cannot be construed as such action. Wiggins v. Lykes Bros., Inc., Fla. 1957, 97 So.2d 273, 276; Gagnon v. Carrier, 96 N.H. 409, 77 A.2d 868; 3 Farnham Water & Water Rights 2396 (1904).
Affirmed.
CARROLL, CHAS., C.J., and HORTON, J., concur.