The Honorable Paul Miller State Senator P.O. Box 488 Melbourne, AR 72556-9511
Dear Senator Miller:
I am writing in response to your request for my opinion on the following two questions relating to the reclassification of municipal judges to district judges:
 1. Does Act 1727 of 2003 create "new district courts" and "new district judge offices" that are different from the current municipal courts and municipal judge offices?
 2. For a current municipal judge who was appointed [by] the Governor, does Act 1727 of 2003 make the individual eligible to run for the office of district [judge] upon completion of the appointed term as a municipal judge?
RESPONSE
In my opinion, the answer to your first question is "no."Act 1727 of 2003, codified at A.C.A § 16-17-901 et seq., merely establishes the district court districts and departments effective January 1, 2005 and fixes the number of district judges to serve those courts. Currently, "district" courts and judges are merely renamed "municipal" courts and judges, having precisely the same subject matter and territorial jurisdiction. A.C.A § 16-17-132(a) (Supp. 2003). In Act 1185 of 2003, §§ 207 and 208, the legislature amended A.C.A § 16-88-101(a) to provide that district courts will continue to exercise essentially the same criminal jurisdiction that municipal courts exercised pursuant to A.C.A §16-17-704 before its amendment in Act 1185, §§ 163 and 164. See Amendment 80, §§ 7(B) and 10 (charging district courts with concurrent jurisdiction of misdemeanors and authorizing the legislature with authority to define further criminal jurisdiction). The Arkansas Supreme Court has yet to define, as it is charged with doing at Amendment 80, § 7(B), what will be the civil subject matter jurisdiction of district courts. However, whatever that jurisdiction might be, I do not believe Act 1727 establishes a new variety of court or judge that would enable a gubernatorial appointee to run for a judgeship without offending Ark. Const. amend. 29, § 2. With respect to your second question, I believe that an appointee could run for district judge in 2004 only if Act 1727 had reconfigured the district in which the individual had served as an appointee to an extent that the individual could not reasonably be described as "succeeding himself" in violation of Ark. Const. amend. 29, § 2.
Question 1: Does Act 1727 of 2003 create "new district courts" and "newdistrict judge offices" that are different from the current municipalcourts and municipal judge offices?
In my opinion, the answer to this question is "no." Act 1727 of 2003 does no more than define the territorial jurisdiction of district courts, their geographical location and the number of judges to serve in each. Previous legislation, Act 1693 of 2001, merely redesignated "municipal" courts and judges "district" courts and judges, thereby indicating that a "district" court is indistinguishable from the former "municipal" court.
In Ark. Op. Att'y Gen. No. 2001-297, one of my predecessors, with whom I fully concur, responded as follows to a request regarding the relationship between municipal courts and district courts in the wake of the adoption of Ark. Const. amend. 80, which reorganized the court system in Arkansas:
 The answer to this question could not be clearer under Act 1693 of 2001. Section 1(a) of that act states that "All municipal courts now in existence shall be known as district courts and all judges of the former courts will be know as district judges." The effective date of this Act was July 1, 2001. Acts 2001, No. 1693, § 3.
 The provisions of Amendment 80 are not as clear on the point. In my opinion, however, Amendment 80 also leads to the conclusion that municipal judges became "district" judges on July 1, 2001. Section 7(A) of Amendment 80 states that "District Courts are established as the trial courts of limited jurisdiction. . . ." (Emphasis added). This provision was effective July 1, 2001. In addition, although subsection (A)(3) of Section 19 of Amendment 80 (the provision on which you focus), still refers to" municipal judges," other subsections of that same Section appear to refer to "district judges" and "district courts" in the present tense. See Amendment 80, § 19 (B)(2) and (C).
 In addition, the Arkansas Supreme Court has apparently recognized the legitimacy of Act 1693 of 2001 on this point, as it amended Rule 1 of the Inferior Court Rules to change the reference to "municipal courts" to "districts courts." See In Re Implementation of Amendment 80: Amendments to Rules of Civil Procedure and Inferior Court Rules, Addition to Reporter's Notes, Rule 1 (May 24, 2001), effective July 1, 2001.
The referenced § 1(a) of Act 1693 is currently codified at A.C.A § 16-17-132(a) (Supp. 2003), which provides in pertinent part:
 (1)(A) All municipal courts now in existence shall be known as district courts.
(B) All judges of the former courts will be known as district judges.
 (2) District courts shall have the jurisdiction vested in the presently established municipal courts.
As noted above, Act 1727 established the territorial jurisdiction of district courts and the number of district court judges as of January 1, 2005. See Ark. Op. Att'y Gen. No. 2003-159 (discussing the prospective effect of Act 1727). In response to your particular question, I do not read Act 1727 as creating a "new" variety of court or judge; rather, it simply establishes the districts from which judges will be elected in 2004 and the number of judges to be elected in 2004. In certain instances, it creates new districts or departments of a district,[1]
but it does not create a new variety of court or judge. As reflected in A.C.A § 16-17-132(a), supra, "municipal courts" were merely redesignated "district courts" and "municipal judges" were redesignated "district judges."
Underlying your question appears to be a concern whether the nature of a district court after January 1, 2005 might be considered sufficiently different from a past municipal or current district court that a district court judgeship after that date might be considered a completely different office. If this question were answered in the affirmative, a currently appointed district judge would appear able to run for the office without offending the proscription in Amendment 29, § 2 against a gubernatorial appointee's running for the office to which he was appointed.[2]
A district court after January 1, 2005 will differ from a current district court insofar as it will be what the supreme court describes as "the unified limited jurisdiction court in Arkansas." In ReImplementation of Amendment 80: Amendments to Rules of Civil Procedureand Inferior Court Rules, Addition to Reporter's Notes, Rule 1 (May 24, 2001); see Amendment 80, § 19(B)(2) (calling for the merger of all inferior courts other than city courts into the district courts). The term "unified" may be somewhat misleading in that Amendment 80 contemplates the continued existence of city courts unless the legislature or the governing body of a city abolishes the city court. Amendment 80, § 19(B)(2). The term may further be misleading in that the practical effect of Amendment 80 will simply be to abolish inferior courts other than district and city courts. The impending merger of inferior courts in itself should not significantly affect the nature of the district court, which currently has concurrent jurisdiction with other existing inferior courts.[3] This conclusion is in all respects consistent with the following provision of Amendment 80, § 19(C): "Effective January 1, 2005, the District Courts shall be regarded as a continuation of the Municipal Courts, Corporation Courts, Police Courts, Justice of the Peace Courts and Courts of Common Pleas now existing."
Depending upon what rules the supreme court adopts pursuant to Amendment 80, § 7(B), it is quite possible that the civil subject matter jurisdiction of district courts will expand significantly after January 1, 2005. In In Re Implementation of Amendment 80: Amendments to Rules ofCivil Procedure and Inferior Court Rules, Addition to Reporter's Notes,Rule 1 (May 24, 2001), the court expressed its conviction that district courts should be invested with wider subject matter jurisdiction. However, in my opinion, any such expansion in itself would not render the court a different type of entity than it is now — or, for that matter, than it was when denominated a "municipal" court. On the contrary, as noted in the previous paragraph, Amendment 80, § 19(C) clearly states that a district court after January 1, 2005 is merely a "continuation" of the municipal court in existence prior to the adoption of Amendment 80. The district court will remain, as it has always been, the primary Arkansas court of limited jurisdiction. Accordingly, even if the court were to expand the district court's subject matter jurisdiction, I do not believe that expansion alone would support a current appointed district court judge in running for the office in 2004. In my opinion, if a municipal court changed only in name and in the expansion of its subject matter jurisdiction, Amendment 29, § 2 would preclude the appointee from thus attempting to succeed himself.
Question 2: For a current municipal judge who was appointed [by]the Governor, does Act 1727 of 2003 make the individual eligibleto run for the office of district [judge] upon completion of theappointed term as a municipal judge?
As noted in my response to your previous question, with respect to possible differences in the subject matter jurisdiction of present and future district courts, I do not believe Amendment 80, Act 1727 or any other provision of law would support an appointed judge's running for election to the same district. However, the issue becomes more complicated in those instances where Act 1727 modified a district's boundaries, which by operation of Act 1727 will define the extent of a district's territorial jurisdiction as of January 1, 2005. If the district boundaries remain the same, as they will in many instances, I believe the appointee will be barred from running by Ark. Const. amend.29, § 2. See the attached Ark. Op. Att'y Gen. No. 2001-259. If the boundaries do not remain the same, I believe a factual question will exist as to whether the new district so closely resembles the old that the appointee might reasonably be characterized as impermissibly attempting to succeed himself in derogation of Amendment 29, § 2.
In considering whether Amendment 29, § 2 will preclude an appointee from running for election, the issue with respect to each appointee is whether Act 1727 changes the contours of the district to which he was appointed to such an extent that he could not reasonably be characterized as "succeeding himself" if he were to be elected in the 2004 nonpartisan judicial election. Addressing this issue in any particular case will entail conducting a factual inquiry into the relationship between the district the candidate served as an appointee and the district in which he seeks election.
Until Act 1727 takes effect, the territorial jurisdiction of any district judge is countywide. See discussion in Ark. Op. Att'y Gen. No. 2003-159. After January 1, 2005, the territorial jurisdiction of a district judge will extend only to the geographical borders of the district to which he was elected. If Act 1727 denominates as a county-wide district served by a single judge a county that has previously likewise been served by a single municipal or district judge, any individual appointed to serve in that county prior to the effective date of Act 1727 will be precluded from running for that position in 2004, since he would clearly be running to succeed himself. Subsection 16-17-902(a) of the Code provides that 51 counties in Arkansas will have one district court and one district judge. If, as seems likely, these counties currently also have a single district court and a single district judge, Amendment 29, § 2 will bar any appointee in one of these counties from running for the position.[4]
The Arkansas Supreme Court has been asked only once to address the issue of whether an appointed official (a justice of the peace) who ran for election following a reapportionment of the district he was appointed to represent was attempting to succeed himself in derogation of Amendment 29. Pederson v. Stracener, 2003 WL 22671682 (Nov. 13, 2003). Unfortunately, the court never reached this issue. Instead, it reversed on purely procedural grounds the trial court's injunction against swearing the official in, ruling that a post-election petition for a writ of mandamus and declaratory judgment was an unavailable avenue for relief after an election had occurred. The trial court consequently lacked jurisdiction to entertain the question before it.[5] Id. at 2.
However, my predecessors have addressed closely analogous situations on several occasions. In Ark. Op. Att'y Gen. No. 91-379, one of my predecessors was likewise asked to address whether an appointed quorum court member might run for election if the quorum court district boundaries had been changed through reapportionment. My predecessor rendered the following opinion:
 [I]t is my opinion that Mr. Massengale, and others in his position, could make a convincing argument that they are eligible to run for newly created districts because in doing so they are not "succeeding themselves."
* * *
 It has been held that to "succeed" or to be a "successor" means to follow or take the place another has left and to sustain the like part or character. Citizens Suburban Co. v. Rosemont Development Co., 53 Cal.Rptr. 551, 244 C.A.2d 666 (1966); Albury v. Central and Southern Florida Flood Control Dist., 99 So.2d 248 (Fla.App. 1957); Wawak Co. v. Daiser, 90 F.2d 694 (7th Cir. 1937); Thompson v. North Texas Nat. Bank, 37 S.W.2d 735 (1931); and Dille v. Plainview Coal Co., 217 Iowa 827, 250 N.W. 607 (1933). See also Black's Law Dictionary (5th Ed. 1979) at 1238. An argument could be made here that Mr. Massengale, and others in his position, are not sustaining the like part or character because they would be running in different districts.
 It is clear that an appointee, after the expiration of the unexpired term, would be eligible to run in a neighboring district, or another district to which he was not appointed. He would not thereby be "succeeding himself," but someone else. It might therefore be successfully contended that an appointed official running for a newly reapportioned district is similarly not succeeding himself or anyone else. If the district is in fact a new one, that is, it contains different geographic parameters and constituents and a new district number, as is my understanding in this case, it is my opinion that it has in fact no incumbent; and the appointee, if elected, would not be succeeding to the same office to which appointed.
In support of his opinion, my predecessor invoked Ark. Op. Att'y Gen. No. 77-189, in which one of his predecessors opined that an appointed chancellor could run for and hold a chancellorship in a newly created circuit-chancery district that comprised two of the three counties in the district to which he had been appointed. My predecessor supported this opinion as follows:
 While it is plain the appointee you contemplate cannot succeed himself, it is equally plain that since the 19th circuit-chancery court circuit will not even exist during his term of office, he would not be, if elected, succeeding himself or anyone else. Because of the very material changes in the makeup of the new 19th circuit-chancery court circuit, it surely could not be argued the designation is all form and no substance.
I question whether Opinion 77-189 offers a direct precedent for Opinion91-379, since the facts in the former case involved not only a change in the numbering and boundaries of the district, but an actual change in the court's jurisdiction from chancery to circuit-chancery.[6] Compare
Ark. Op. Att'y Gen. No. 86-046 (appointed circuit judge can run for newly created chancery judgeship in same district despite the fact that the judges could have exchanged circuits and tried matters in each other's courts). Moreover, I am troubled by the possible suggestion in my predecessor's opinion that any change in a district's boundaries, especially if coupled with a renumbering of the district, might enable an appointee to run for election.
In the attached Ark. Op. Att'y Gen. No. 98-076, my predecessor revisited this issue, rendering an analysis that I consider somewhat more nuanced than his earlier discussion. My predecessor paraphrased as follows the question he had been posed:
 That question is whether a gubernatorial appointee to a circuit/chancery judgeship may file, run for, and hold the position of circuit/chancery judge where the judicial district to which he was appointed has been split into two new separate districts, and the judgeship to which he was appointed is moved to another district and a new circuit-chancery judgeship, the one he seeks, is created in its place.
* * *
 In my opinion, the intention of Amendment 29, § 2 is to prohibit the appointee from gaining the unequal advantage of incumbency as against those who would seek election to the office. In my opinion, under the circumstances you describe, the Arkansas Supreme Court would evaluate this potential advantage in light of the actual changes made in the geography and constituency served by the new district. In some cases these changes may indeed be "all form and no substance." In others, material changes in representation may lessen or obviate any such advantage. This is ultimately a question of fact for a court of competent jurisdiction.
 Where the appointee seeks election to a different judgeship, as in the case of an appointed circuit judge running for election to a different division of the same district (see, e.g., Op. Att'y Gen. 93-022), it may be argued that the action does not even fall with the plain language of the Amendment 29, § 2 prohibition. That person is not attempting to "succeed himself but someone else." Op. Att'y Gen. 91-379. If the drafters of Amendment 29 had intended to bar the appointee from running for any similar office after the term of the appointment, they could have easily so stated. Where, however, the boundaries of the district have merely changed somewhat around the existing position, the Arkansas Supreme Court will, in my opinion, evaluate the materiality of the changes made to the district and the potential for the advantage Amendment 29, § 2 seeks to prohibit.
I agree with my predecessor's analysis. In this regard, I should note that, although the Supreme Court did not reach the issue in Pedersen, see discussion supra, it may be instructive that the trial court in addressing the merits did not feel bound to interpret the constitutional language "succeed himself" as meaning "represent precisely the same geographical district he did before," instead ruling that despite the fact of the reapportionment, the elected judge had impermissibly succeeded himself in office. As noted above, it is clear that one can run for a different category of office than that to which one was appointed in the same district without offending Amendment 29. However, when the office is the same and the only change is in the boundaries of the district — a condition that may or may not apply in certain instances when Act 1727 takes effect — then the factual question will be whether or not the change is so insignificant that a former appointee serving the reformed district could reasonably be described as "succeeding himself." If so, I believe the former appointee's service would be barred by operation of Amendment 29, § 2.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosures
[1] I will discuss in my response to your second question the implications of these territorial adjustments upon the issue of whether an appointee may run for a particular judgeship.
[2] Subsection 16-17-132(b), which was enacted as Act 1693 of 2001 in the wake of the adoption of Amendment 80, provides: "A vacancy in a district court judgeship shall be filled in the same manner and subject to the same restrictions as for vacancies under Arkansas Constitution, Amendment 29." Section 2 of Amendment 29 expressly provides that no gubernatorial appointee "shall be eligible for appointment or election to succeed himself." I am enclosing for your information a copy of Ark. Op. Att'y Gen. No. 2001-259, in which my predecessor opined that this provision precludes an appointed municipal or district court judge from running for the office to which he was appointed. My predecessor was not asked, as you have in your request, what effect redistricting under legislation like Act 1727 might have on the question of succession.
[3] The only existing inferior courts other than district courts are justice of the peace courts, city courts and police courts. Effective July 1, 2001, Amendment 80, § 22 repealed Article 7, § 32 of the Arkansas Constitution, which authorized the legislature to create courts of common pleas. Article 7, § 43, which will remain effective until January 1, 2005, see Amendment 80, § 22, defines the jurisdiction of municipal corporation courts as being concurrent with justice of the peace courts.
The only possible expansion of district court jurisdiction that might result from the merger of inferior courts would occur if a city court were abolished, thereby investing in the nearest district court the city court's jurisdiction. Amendment 80, § 19(B)(2). Under current law, a district court has jurisdiction to try violations of ordinances of the city or county in which the district is located. A.C.A §16-88-101(a)(4), as amended by Act 1185, § 207. Although the legislature has included this same provision as applicable after January 1, 2005, see Act 1185, § 208, Amendment 80, § 19(B)(2) clearly dictates that the nearest district court will also adjudicate violations of another city's ordinances if the city court in the other city is abolished.
[4] Although it does not bear directly on your question, I will note that the issue of an appointee's "succeeding himself" becomes somewhat more complicated if a district contains several divisions. In Brewer v.Fergus, 348 Ark. 577, 79 S.W.3d 831 (2002), the court addressed a challenge to two candidates' eligibility to run for circuit judgeships in certain divisions of a circuit after each had served by appointment as circuit judge in other divisions of the same circuit. The court couched the issue as follows:
 Appellant argues . . . that a circuit judge who is appointed to fill a vacancy in one division, and who then runs for the office of circuit judge of another division in the same judicial circuit, is in effect running for the same elective office because he or she would enjoy the advantages of incumbency in that the voters would be the same as they would have been had he or she run for the exact same division to which he or she was appointed. Appellants' argument is understandable, but skips essential steps in constitutional analysis. We may not simply analyze the issue based upon rules of interpretation without first determining whether we may resort to those rules.
Id. at 582. The court then simply applied the literal terms of Amendment 29, § 2, concluding that a candidate could not be deemed to be running to "succeed himself" if he were running for a division judgeship previously held by another individual. Id. at 583-84.
Act 1727 did away with "divisions" of district courts as that term is used in the current court system, instead using the term "division" to mean "the subject matter division of the court." Section 1(2). However, under Act 1727, certain districts have more than one "department" — a term defined as "the physical location where sessions of court are held." Section 1(1). In those instances where a district has more than one department, Act 1727 on occasion calls for the election of one judge to serve both departments, see section 7(a) (Clay County), or for the election of a separate judge to serve each department, see section 8(a) (Ashley County). In the latter case, each of the judges will have district-wide jurisdiction, see section 8(c), which renders their situation somewhat analogous to the division judges in Brewer. It is unclear whether a district judge assigned to one department in Ashley County could run for election to the other department under the court's reasoning in Brewer.
[5] The court noted that the only available post-election remedy would be through a petition for a writ quo warranto brought by the prosecuting attorney alleging usurpation of office pursuant to A.C.A § 16-118-105
(Supp. 2003).
[6] I consider such a change from one category of existing court to another logically distinguishable from the possibility I discussed in my response to your first question — namely, a permissible expansion of an existing court's jurisdiction without reclassifying it as another category of existing court.